396 F.2d 746
 Stewart L. UDALL, Secretary of the Interior, State of Alaska, Appellants,
v.
Andrew J. KALERAK, Jr., Armand C. Spielman, Ronald L. Thiel, Ray McCubbins, Lawrence McCubbins, Carl B. Fiscus, C. H. Trombley, Arvil Gary Taylor, Pearl Gingerich, Appellees.
 No. 21629.
 United States Court of Appeals Ninth Circuit.
 June 19, 1968.
 Rehearing Denied September 23, 1968.
 
 Edgar Paul Boyko (argued), Atty. Gen., Douglas B. Baily, Asst. Atty. Gen., Juneau, Alaska, for appellant State of Alaska.
 William M. Cohen (argued), Roger P. Marquis, Edwin L. Weisl, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Richard L. McVeigh, U. S. Atty., Gerald J. Van Hoomissen, Asst. U. S. Atty., Anchorage, Alaska, for Stewart L. Udall.
 Murphy Clark (argued) of Hughes, Thorsness & Lowe, Anchorage, Alaska, for appellees.
 Before HAMLEY and DUNIWAY, Circuit Judges, and BYRNE,* District Judge.
 HAMLEY, Circuit Judge:
 
 
 1
 Andrew J. Kalerak, Jr. and eight other individuals brought this action in the district court to set aside a decision of the Secretary of the Interior rejecting their individual applications for certain tracts of land in the federal public domain in Alaska. Stewart L. Udall, Secretary of the Interior (Secretary) was named defendant, and the State of Alaska was thereafter permitted to intervene as an additional defendant. The facts are not in dispute. Both sides moved for summary judgment. The district court granted plaintiffs' motion and defendants appeal.
 
 
 2
 Under section 6(b) of the Alaska Statehood Act of July 7, 1958 (Act), 72 Stat. 339, 48 U.S.C. ch. 2, § 6(b), (1964), Alaska is permitted to select over a twenty-five year period after its admission into the Union, up to 102,550,000 acres from the public lands of the United States in Alaska which are vacant, unappropriated, and unreserved at the time of their selection. This litigation concerns a conflict between Alaska's claim to certain of these public lands, sought to be selected pursuant to section 6(b), and plaintiffs' claims to the same lands based upon their respective notices of location of settlement or occupancy for homestead purposes.
 
 
 3
 On March 29, 1949, by Public Land Order 576, 14 F.R. 1614, the United States withdrew the lands in question from appropriation. On January 8, 1963, while the lands were still withdrawn from appropriation, and therefore not available for selection by the state under section 6(b), Alaska filed with the local land office of the Federal Bureau of Land Management (land office), its application No. A-058566 for the selection of 26,880 acres of land as part of its section 6(b) allotment, such selection including the lands in question. The selection was posted in the appropriate land and status records.
 
 
 4
 On April 8, 1963, by Public Land Order 3022, 28 F.R. 3661, the Secretary revoked the withdrawal of the land and released it for appropriation. Pursuant to section 6(g) of the Act, this order provided that Alaska be given a ninety-day preference period (to July 8, 1963) to claim the land. During the ninety-day period Alaska did not file a new application for the selecting of the 26,880 acres of land (including those here in question) which were described in its application of January 8, 1963.
 
 
 5
 Within that period, however, Alaska filed with the land office two letters requesting that its original application No. A-058566 be amended to embrace certain described lands, none of which were described in the original application. These letters were filed on April 8 and May 24, 1963. After the expiration of that ninety-day period, Alaska filed in the same office two more letters (March 16 and 17, 1964), making similar requests with respect to other lands not described in any of the previous applications.
 
 
 6
 On October 8, 1964, the land office directed that Alaska publish a notice of its application in an Anchorage newspaper for five consecutive weeks. The publication was carried out within the time allowed and described all lands applied for, including those described in the original application.
 
 
 7
 Between May 27 and June 17, 1965, Kalerak and the other plaintiffs sought to file with the land office their Notice of Location of Settlement or Occupancy Claim. The land office refused to accept plaintiffs' notices for recordation. The Bureau of Land Management, on appeal, reversed the decision of the land office. The Secretary, in an appeal by Alaska, reversed the decision of the Bureau of Land Management, thereby restoring the decision of the land office that the tendered notices of the plaintiffs should not be filed. The district court judgment here under review, in turn, reversed the decision of the Secretary, thereby holding that plaintiffs' claims to the lands in question should prevail over Alaska's claim.
 
 
 8
 In connection with the problem arising from the fact that Alaska's original application for selection was filed at a time when the lands were withdrawn from selection, the Secretary held, alternatively:
 
 
 9
 (1) Whether or not Alaska's original selection was defective because made with reference to lands which were then withdrawn, it nevertheless accomplished a segregation of those lands such that they were not subject to applications and appropriations under the public land laws, the result being that plaintiffs' claims for settlement or location, made while such segregation was in effect, were invalid; and
 
 
 10
 (2) Alaska's four amendments of its original application for selection, made after the withdrawal of the lands had been revoked, amounted to a re-application for selection of the lands described in the original application, the result being that plaintiffs' claims, subsequently tendered for filing, were properly rejected.
 
 
 11
 The district court declined to accept either of these rulings by the Secretary.
 
 
 12
 In our opinion the district court erred in failing to accept the second of these rulings. While Alaska's four amendments of the original application did not include the land descriptions set out in the original application, the state intended such amendments as a reassertion of the original land descriptions as well as applications for the selection of additional lands. This is indicated by the facts that: (1) the new lands were brought in by amendment of the original application (referring thereto by number), rather than by new applications, (2) the amendments referred to "additional open lands," indicating Alaska's view that it wished to select the lands described in the original application, and add thereto, and (3) the notice published after the four amendments had been filed, and before any of the plaintiffs tendered their claims for filing, named all lands described in the original application as well as the four amendments.
 
 
 13
 In view of Alaska's intent in this regard, and the lack of prejudice to plaintiffs inasmuch as they had notice of Alaska's claim to all such lands before they tendered their claims, the Secretary did not abuse his discretion in accepting the amendments as a timely reassertion of Alaska's original application.[1]
 
 
 14
 Apart from plaintiffs' challenge to Alaska's claim based on the circumstance that the lands were withdrawn at the time of the original application, plaintiffs argue that since Alaska sought the lands in question to assist the City of Anchorage in protecting its water supply, its selection was invalid because in violation of the alienation prohibition of section 6(g) of the Act and in derogation of the Equal Protection Clause of the Fourteenth Amendment.
 
 
 15
 On March 8, 1962, the City of Anchorage made a request of the land office that the lands in question be withdrawn for watershed purposes. In a letter dated September 28, 1962, addressed to the State Division of Lands, the state office of the Bureau of Land Management stated that the city was not a proper applicant. In this letter it was also suggested that the state might file a blanket selection for the withdrawn lands with an assurance that the selected lands would be classified for watershed purposes. Responsive to this suggestion the state filed its application of January 8, 1963, for the selection of 26,880 acres of public land.
 
 
 16
 In arguing that, under these circumstances, Alaska's selection of these lands is in violation of section 6(g), plaintiffs call attention to the provision of that section that:
 
 
 17
 "The authority to make selections shall never be alienated or bargained away, in whole or in part, by the State of Alaska."
 
 
 18
 The Secretary rejected this contention, holding that there was no evidence to support the charge that Alaska had, or intended to, alienate or bargain away its section 6(b) power to select public lands. The district court expressed no view on this point.
 
 
 19
 We are in agreement with the Secretary. The selection was made by Alaska in its own name and, insofar as the record shows, not subject to any contract, conveyance or other transaction with the City of Anchorage. The lands in question were initially subject to Public Land Order No. 576, 13 F.R. 1614, for the protection of the water supply of the Anchorage area. The steps thereafter taken by Alaska, as described above, were designed and intended to fulfill this intent. The fact that the interests of the state and of its political subdivision, the City of Anchorage, coincide, is without legal significance and, on this record, in no sense evidences a violation of the prohibition against alienation contained in section 6(g).
 
 
 20
 With regard to its equal protection argument, plaintiffs note that, under section 6(a), Alaska is permitted to select some 800,000 acres of land for the purpose of furthering the development and expansion of its communities. In view of this provision, and of the limitation upon the number of acres Alaska is entitled to select under section 6(b), plaintiffs contend that Alaska's intent to use the lands here in question to protect Anchorage's water supply discriminates against the rest of the state and the citizens thereof.
 
 
 21
 Neither the Secretary nor the district court discussed this argument. We conclude that it is without merit. The purpose of the land grants under the Act is to serve Alaska's overall economic and social well-being. Some of the lands so selected will probably be used to protect mineral deposits. Others will safeguard wildlife. Still others will be used to protect domestic water supplies. The lands in question fall in the latter category and are designed to serve the most populous area of the state. No deprivation of the equal protection of the laws is remotely involved.
 
 
 22
 Reversed.
 
 
 
 Notes:
 
 
 *
 The Honorable William M. Byrne, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 We need not decide whether the district court erred in declining to accept the Secretary's alternative ruling that Alaska's original application, even if defective, accomplished a segregation of lands which prevented plaintiffs from acquiring rights therein while the segregation remained in effect